UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARIO CARDENAS,

     Petitioner,

v.                                       Case No. 8:20-cv-1015-CEH-AAS

SECRETARY, DEPARTMENT
OF CORRECTIONS.

     Respondent.

_____/

**O R D E R**

Mario Cardenas petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court convictions for conspiracy to purchase cocaine and attempted trafficking of cocaine. (Doc. 1) The respondent argues that Ground One is unexhausted and procedurally barred from federal review and that the remaining grounds are meritless. (Doc. 14) Upon review of the petition, the response, and the relevant state court record (Doc. 15-2), the petition is denied.

**PROCEDURAL HISTORY**

An information charged Cardenas and co-defendant, Steven Craig Heatly, Jr., with conspiracy to traffic cocaine and attempted trafficking of cocaine. (Doc. 15-2 at 20–24)[1] A jury found Cardenas guilty of conspiracy to purchase cocaine, a lesser offense, and the attempted trafficking charge. (Doc. 15-2 at 88–89) The trial court

_____

[1] Also, the information charged Heatly with resisting arrest. (Doc. 15-2 at 21)

sentenced Cardenas to five years in prison for the conspiracy conviction and a concurrent fifteen years for the attempted trafficking conviction. (Doc. 15-2 at 95–101) Cardenas appealed (Doc. 15-2 at 93), and the state appellate court affirmed. (Doc. 15-2 at 661)

The post-conviction court denied Cardenas relief after an evidentiary hearing. (Doc. 15-2 at 707–14, 810–16, 905–14) Cardenas failed to timely appeal, but the state appellate court granted Cardenas's petition for a belated appeal. (Doc. 15-2 at 1035) The state appellate court affirmed the post-conviction court's order denying relief. (Doc. 15-2 at 1082) Cardenas's federal petition follows.

## FACTS

Evidence at trial proved the following facts. A confidential informant introduced an undercover detective to Cardenas, who wanted to purchase three kilograms of cocaine. (Doc. 15-2 at 290, 297, 344) Cardenas, the confidential informant, and the detective met in the parking lot of a pharmacy. (Doc. 15-2 at 297, 299, 343, 414–15, 438–40) Cardenas and the detective negotiated the price of the cocaine and the location where Cardenas could test the purity of the cocaine. (Doc. 15-2 at 345–47) The detective told Cardenas that he could purchase the cocaine for $28,000.00 a kilogram. (Doc. 15-2 at 348) Cardenas called Heatly on the telephone and told him that the price of the cocaine was $31,500.00 or $32,000.00 a kilogram. (Doc. 15-2 at 350) After the telephone call ended, Cardenas told the detective that Cardenas would receive $3,000.00 a kilogram for brokering the sale. (Doc. 15-2 at 354–55)

Later that day, the confidential informant called Cardenas to arrange a location for the purchase of the cocaine. (Doc. 15-2 at 351–52) Cardenas, the confidential informant, and the undercover detective met in the parking lot of a grocery store. (Doc. 15-2 at 304, 352–53, 415, 445–46) The undercover detective had placed three kilograms of cocaine in the trunk of his car. (Doc. 15-2 at 441–43) Heatly arrived in a truck. (Doc. 15-2 at 305–06, 353–55, 467) Cardenas introduced Heatly to the confidential informant and the detective. (Doc. 15-2 at 306, 356, 467–68) The detective told Heatly that the price of the cocaine was $31,000.00, and Heatly left to get the money. (Doc. 15-2 at 307–08, 358–60, 468)

Cardenas became upset because the undercover detective had lowered the price of the cocaine. (Doc. 15-2 at 360–61) The detective responded that "it was just business," and that was the price. (Doc. 15-2 at 361–62) While Cardenas waited with the confidential informant and the detective for Heatly to return, Heatly called Cardenas and asked the detective to lower the price. (Doc. 15-2 at 364–65) Cardenas told the detective not to lower the price below $31,000.00. (Doc. 15-2 at 365–66) The detective told Heatly that he could not lower the price. (Doc. 15-2 at 365)

Heatly returned, and Cardenas entered Heatly's truck. (Doc. 15-2 at 366) The undercover detective approached Heatly's truck and saw a box filled with cash on the floor of the back seat. (Doc. 15-2 at 366–67) The detective asked Heatly if he wanted to look at the cocaine, and Heatly told the detective to follow him because Heatly wanted to complete the sale at a house nearby. (Doc. 15-2 at 367–68) The detective signaled to other police officers who were surveilling the scene, and the police officers

3

arrested Cardenas and Heatly. (Doc. 15-2 at 310–11, 368, 449–50, 469) The box in Heatly's car contained $93,000.00 in cash. (Doc. 15-2 at 333, 451, 478) Police placed three one-kilogram packages of cocaine and the cash into an evidence locker. (Doc. 15-2 at 320–21, 370, 384–85, 422–23, 426, 451–52)[2] A chemist determined that one of the packages contained cocaine and weighed 999.9 grams. (Doc. 15-2 at 484–86)

The confidential informant did not testify at trial. Before trial, the trial court denied Cardenas's request for the disclosure of the identity of the confidential informant. (Doc. 15-2 at 121–27, 261–65) At trial, the detective testified that police paid the confidential informant money for his cooperation and that the amount of money that the confidential informant received was based on the quantity of cocaine sold and whether the transaction resulted in an arrest and a conviction. (Doc. 15-2 at 331–32, 429)

## GOVERNING LEGAL PRINCIPLES

### AEDPA

Because Cardenas filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, AEDPA governs the review of his claims. *Lindh v. Murphy*, 521 U.S. 320, 336–37 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

---

[2] Police removed two kilograms of cocaine from the evidence locker to use in other undercover operations. (Doc. 15-2 at 423, 461)

4

> merits in State court proceedings unless the adjudication of the claim —
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) interprets this constraint on the power of the federal habeas court to grant a state prisoner's petition:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Clearly established federal law refers to the holding of a U.S. Supreme Court's opinion at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

"[A]n unreasonable application of federal law is different from an *incorrect* or *erroneous* application of federal law." *Williams*, 529 U.S. at 412 (italics in original). Even clear error is not enough. *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86,

103 (2011). "This is 'meant to be' a difficult standard to meet." *LeBlanc*, 582 U.S. at 94 (quoting *Richter*, 562 U.S. at 102).

A factual determination by the state court is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). A federal habeas court may grant relief "only if in light of the evidence presented in the state court proceedings, no reasonable jurist would agree with the factual determinations upon which the state court decision is based." *Raleigh v. Sec'y, Fla. Dep't Corrs.*, 827 F.3d 938, 948–49 (11th Cir. 2016). A state court's factual determination is presumed correct, and a petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Consequently, "review under [Section] 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). *Accord Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1294–95 (11th Cir. 2015) (extending *Pinholster* to Section 2254(d)(2)).

If the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons in the opinion and defers to those reasons if reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). If the last state court decision is without reasons, the federal court "should 'look through' the

unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192.

**Ineffective Assistance of Counsel**

Cardenas asserts ineffective assistance of counsel — a difficult claim to sustain.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984) defines a petitioner's burden:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"[T]here is no reason for a court deciding an ineffective assistance of counsel claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (quoting *Johnson v. Sec'y, Dep't Corrs.*, 643 F.3d 907, 911 (11th Cir. 2011)).

**Exhaustion and Procedural Default**

A petitioner must exhaust the remedies available in state court before a federal court can grant relief on federal habeas. 28 U.S.C. § 2254(b)(1)(A). The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971). The state court must have the first opportunity to review and correct any alleged violation of a federal right. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay — or dismiss without prejudice — a habeas case to allow a petitioner to return to state court to exhaust a claim. *Rhines v. Weber*, 544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982). If the state court would deny the claim

on state procedural grounds, the federal court instead denies the claim as procedurally barred. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). A petitioner may excuse a procedural default on federal habeas by (1) showing cause for the default and actual prejudice from the alleged violation of federal law or (2) demonstrating a miscarriage of justice. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

## ANALYSIS

### Ground One and Ground Two

In Ground One, Cardenas asserts that the trial court violated his federal right to confront his accuser and his federal right to a fair trial by denying his motion to compel disclosure of the confidential informant's identity. (Doc. 1 at 4–6) He contends that the identity of the confidential informant was critical to his defense and that the state court unreasonably applied *Roviaro v. United States*, 353 U.S. 53 (1957). (Doc. 1 at 6) In Ground Two, Cardenas asserts that the trial court violated his federal right to a fair trial by denying his motion to compel disclosure of a video recording of the drug transaction. (Doc. 1 at 8)

The Respondent asserts that Cardenas did not exhaust the claim in Ground One because he failed to alert the state court to the federal nature of his claim. (Doc. 14 at 9–11) Cardenas raised the claim in his motion to compel and his brief on direct appeal, cited *Roviaro*, and applied the test in the U.S. Supreme Court opinion. (Doc. 15-2 at 47–52, 601–04) Because the holding in *Roviaro* is based on the federal right to due

process, and Cardenas invoked one complete round of the state's established appellate review process, Cardenas exhausted the claim. *Renzi v. Virginia*, 794 F.2d 155, 158 (4th Cir. 1986) ("The claim of a deprivation of due process, coupled with a citation to *Roviaro*, in which the court held that there had been a denial of federally guaranteed due process upon strikingly similar facts, was enough to have given the state court warning that a federal constitutional claim was being presented."). *See also United States v. Valenzuela-Bernal*, 458 U.S. 858, 870 (1982) ("While *Roviaro* was not decided on the basis of constitutional claims, its subsequent affirmation in *McCray v. Illinois*, 386 U.S. 300 (1967), where both due process and confrontation claims were considered by the Court, suggests that *Roviaro* would not have been decided differently if those claims had actually been called to the Court's attention.").

Before trial, trial counsel moved to compel disclosure of the identity of the confidential informant and the video recording, and the trial court denied the motion as follows (Doc. 15-2 at 121–27):

> [Trial counsel:] . . . My client is requesting that I — my client is requesting that I be given the name of the confidential informant. I have already spoken with [the prosecutor]. She has informed me that she is not intending to call him at trial. I explained to my client what the law was with regards to that issue but he did request that I file this motion with the Court. Additionally, I filed a motion to compel the State to allow Mr. Cardenas to view the video.
>
> Again, I have had numerous conversations with [the prosecutor] regarding the video as well as whether or not she plans on producing it at trial. But Mr. Cardenas

|                    | does in fact want to see the video himself. I have personally viewed it with the translator. |
|--------------------|-------------------------------------------------------------------------------------------------|
| [Trial judge:]     | Is this a charge of selling? I don't have the facts of selling or delivering drugs to that particular informant. |
| [Trial counsel:]   | No, Your Honor. There is an informant that is accompanying law enforcement at the time when there [are] conversations regarding drug transactions and a potential drug transaction that doesn't go all the way through which is why it is an attempt and conspiracy as opposed to actual. |
| [Trial judge:]     | All right. What is the State's response? |
| [Prosecutor:]      | Regarding the defendant's motion to compel the identity of the confidential informant, the State objects. Firstly, there is no allegation in the defense's motion regarding a reason why the confidential informant needs to be disclosed. They have not alleged that he is necessary to prove the identity of the defendant or they are not alleging that there is some entrapment that was going on in this case and those would be two reasons why we would have to produce the confidential informant. |

Additionally, the confidential informant is not necessary to prove any elements of any charges that Mr. Cardenas or Mr. Heatly is charged with. We don't intend to call the confidential informant at trial. For those reasons, we object to revealing his identity. This is also tied to the second issue which is the fact that [trial counsel], her client is requesting to watch the video. The problem — [trial counsel] has watched the video at the State Attorney's Office. We are not at liberty to disclose [the video] because [ ] the confidential informant is shown repeatedly throughout about one hour [of] video surveillance. At trial, the State — the video

surveillance is, most of it is in Spanish. At trial, the State does not intend to introduce video surveillance. We intend to make still photographs of the video surveillance at certain points and those still photographs will not include photos of the confidential informant. It is the State's position that the Court needs to weigh keeping the identity sealed of the confidential informant and the safety of the confidential informant with the defendant's need to view the video if the State is not going to use it at trial. Obviously, we would produce the photographs that we intend to use at trial to the defense and the defendant would see those still images. If the defendant is requesting to see the video and the Court is inclined to allow the defendant to watch the video himself there would be a lot of editing required for him to see the video because the confidential informant's face would need to be blurred out. That editing has not been completed.

[Trial counsel:]     The State and I have talked about this numerous times. My client is insisting he watch the video. The blurring out of the CI's face [could] be accomplished. I have looked at the video. Quite frankly I can't tell who the confidential informant is and who law enforcement are. I have a sneaking suspicion who it is based on the physical positions of where the people were at and so based on that, that person's face could in fact be blurred out. I did explain to the State that if she is planning on introducing still photos that it is the same — my client is in the same situation as if she was going to introduce any of it in. He is entitled to look at the video in whole so he can see where those still photos are from, so he and I can have a conversation. I advised her if she was not going to use the still photos, my client would still want to look at it but I would think we would be in a different position. And arguably I could

|                    | understand then that you might rule that I personally [have] seen the video and that based on my representations to you that I personally [have] seen it and had a translator, that the situation might be different. In light of the fact that they are planning on using the photos, my client is in a different situation than if they were not. |
|--------------------|------|
| [Trial judge:]     | The photos pose the problem? |
| [Prosecutor:]      | The photos would not include the CI. |
| [Trial judge:]     | The problem is context. I would imagine taking photographs from a video is kind of like reading portions. It is like reading segments of a deposition without the full record. You can't take pictures out of a video selectively and show them to the defense and use them without having a context. At a minimum, [trial counsel] would have to see the video [—] |
| [Prosecutor:]      | [—] She has [—] |
| [Trial judge:]     | [—] [v]iew[ ] the proposed pictures in light of the video. And then make a decision based on the photographs and the video whether she is insisting the client to view the whole video. |
| [Trial counsel:]   | I have not seen the photos as of yet to know where they are coming from or whether I need to re-review the video or not. |
| [Prosecutor:]      | The photos have not been created as of yet. |
| [Trial judge:]     | Right now I don't see a basis to compel the disclosure of the confidential informant. He is not a material witness and he is not going to testify. That motion is denied at this time without prejudice. As to the video, I think that if you are going to offer photographs from the video that are stills you are going to have to give those |

photographs to [trial counsel] and have her review the video and determine what to do next. If she maintains her client needs to see it in its entirety in order to properly defend [himself] then at that point you are going to have to blur out the face [ ]. You can't have it both ways. Since you have not selected the pictures and she hasn't seen it, I am not sure she is in a position to tell me [why it is] absolutely necessary to see the video again. It depends on what the pictures depict.

[Trial counsel:]     That's correct.

[Trial judge:]       I can't rule on that. It is premature. I can't allow select stills of a video without the whole context being reviewed by counsel. If he wants to see it, you are going to have to the protect the identity. . . . The motion to compel identity of the CI is denied without prejudice. As to the videos, the Court reserves ruling pending the review of the proposed photographs. . . .

Before jury selection, trial counsel renewed the motion, and the trial court

denied the renewed motion as follows (Doc. 15-2 at 261–65):

[Trial counsel:]     Yes, Your Honor. I would like to renew my motion to have the CI revealed in this case. Upon speaking with my client last night, after viewing the photos that the State gave me, there are approximately forty photos that the State intends on using at trial and after reviewing them with my client, it has come to my attention that I do need to renew my motion for the disclosure of the confidential informant.

Additionally, I need to renew my motion to have the video released and allow me to show it to Mr. Cardenas. After looking at the photos, there [are] approximately forty of them. My client has consulted with me as to what he believes was happening

|  | during those photos and in order to facilitate his defense I would need the disclosure of the CI as well as releasing the videotape to view with my client. |
|---|---|
| [Trial judge:] | Thank you. Response. |
| [Prosecutor:] | Your Honor, it is the State's position that there is — the Court needs to weigh protecting the identity of the confidential informant — I believe it is in rule 3.220 of the Florida Rules of Criminal Procedure — versus the defendant's need to know the identity of the confidential informant. It is not only the defendant knowing who the CI knows, but once the CI is revealed, that person's name becomes public. It is not only a concern for the defendant directly to know definitely who he is but for that person's name to be in public record. |
|  | Also, in this situation, the defendant is not unfairly prejudiced by not having revealed to him the true identity or the name of the confidential informant because the State is not going to utilize this video as a piece of evidence in this case. The State is not going to have the confidential informant testify as a witness in this case. If we did intend to utilize the video or have the CI testify then absolutely the defendant would be entitled to all of that, but under these circumstances the defendant has been provided all the evidence the State intends to produce at trial. |
| [Trial counsel:] | Judge, again, the State is using the video because they have taken still photos from the video and plan on introducing them into evidence. In fact, they have used the video. Additionally, there are ways to keep the identity of the CI out of the court record. You can in fact seal the identity of the CI from the court records so the same is not in a public place. You can also seal that part of the transcripts or proceedings |

15

as it relates in this case [ ], and you can clear the courtroom other than the jurors. You can also require that the confidential informant's name not be used in an open courtroom including cross examination. He can be referred to by a nickname, pseudo name, or CI number. There are [a number] of ways that the identity of the confidential informant could be protected.

Additionally, even [if] your position is that you are going to allow the State not to disclose the confidential informant, we still would request that we be allowed to view the video. As I said [ ], the burden is on the State to show there is a reason that Mr. Cardenas should not be allowed to view the video. There are ways and have always been ways for them to obstruct the confidential informant's face on the video. It can be done very easily. Our office could even do it if the State does not believe that they have the technology to, but I know they do as well as the Tampa Police Department has the technology. Mr. Cardenas is, after having looked at the video and consulting with me, we again are of the opinion that the video is necessary for Mr. Cardenas to view so that he can consult with me to help prepare his defense in this case.

[Prosecutor:]       The rule I was citing to, 3.220(g)(2). It is the State's position that in the defense's motion to reveal the identity of the confidential informant the defense needs to allege the reason why they would like to reveal the identity. The reason being either that —

[Trial judge:]       I concur. I have read the rule. Anything else you wish to say? I have read the rule and I concur and that's what I said yesterday, I believe. Under that rule I don't mean to cut you off but we do have a jury waiting. I haven't heard anything new or

|                     | different [from] what I heard yesterday. Disclosure of the CI shall not be required unless the CI is to be produced in a hearing or trial or failure to disclose the informant's identity will infringe the constitutional rights of the defendant. I have not heard any basis for that other than speculation and commentary and I am not granting the motion. The motion is denied but it is preserved for the record. The photographs are subject to the same evidentiary requirements as any other still photograph. We will deal with them one by one. |
|---------------------|---|
| [Trial counsel:]    | Just for the record I have no opposition of doing an *ex parte* inquiry of me without the State present because I believe that if I were to reveal off the record as to why I needed [the] identity and the video, it will compromise Mr. Cardenas's defense so I have no problem doing an *ex parte* inquiry. |
| [Trial judge:]      | I'm not comfortable with any *ex parte* inquiry [with] the absence of the other side. [Y]ou are asking me to render a decision based on communications outside the presence of the other side which I cannot do. We are sort of in that impasse. . . . |

At the end of the State's case-in-chief, trial counsel renewed the motion a second time, and the trial court denied the second renewed motion as follows (Doc. 15-2 at 493–97):

|                     | |
|---------------------|---|
| [Trial counsel:]    | I need to renew my motion for disclosure of the confidential informant and renew my motion for the disclosure of the videotape. In addition to the previous arguments that I made which I am renewing, and, Judge, based on the evidence we have heard here today, I would additionally be requesting that the confidential informant's identity be revealed and the tape be revealed in light of the fact that it is our contention that there |

17

were not actually three transactions, but in fact it was one transaction that took place at the CVS and one transaction that took place at the Walmart. It is [ ] our contention that [ ] the tape that exists has an audio track and has a video track with audio. On the audio track where it is an audio track alone you can clearly hear two people talking. You can clearly hear that it appears to be a law enforcement officer and a confidential informant or somebody who is working and you can clearly hear them discussing that the confidential informant is working off charges.

[Trial judge:]      That's not in evidence here. None of that.

[Trial counsel:]    That becomes an issue because there was cross examination, and an attempt to elicit certain information regarding what the confidential [informant] was getting paid.

[Trial judge:]      There was testimony he was being paid.

[Trial counsel:]    But there was —

[Trial judge:]      I heard the testimony. I heard the evidence. You asked the question, and I heard the answer.

[Trial counsel:]    As to whether or not he was working off federal charges, Judge. And the situation we are placed in, in order for Mr. Cardenas without being allowed to cross-examine [ ] the confidential informant or possibly call him as a witness as well as without being able to play the video or the audio in evidence [ ] now puts Mr. Cardenas in a situation where we cannot rebut what the police officers have to say with regard to how the confidential informant or what the CI was getting, whether he was getting money or whether he was working off federal charges.

Additionally, in order to present evidence with regard to what physically occurred as to how many incidents it was in addition to whether or not Mr. Heatly said he wanted to go to another location which is our contention that there is nothing on the audio tape or the videotape of Mr. Heatly speaking in English saying he would like to go to another location. In order to rebut that, the only alternative we would have is that Mr. Cardenas would have to testify. Mr. Cardenas does not plan on testifying due to the fact that he has a prior, [he's] a convicted felon, and he does not wish for the jury to find out.

[Trial judge:]    Whatever his reason I respect his decision. I will have to make [an] inquiry. You are renewing the motions. I have heard extensive argument. Anything further the State wishes to respond to?

. . .

[Prosecutor:]    Detective Torres did testify about [the confidential informant working off charges]. Defense counsel is referring to that and defense counsel was allowed an opportunity to cross-examine [the detective]. The CI's credibility, [that] defense counsel is trying to put at issue, [ ] is not an issue because he is not a witness. He has not been utilized. He is not being utilized to prove any elements of any crimes that are charged.

Regarding the first issue perhaps just to clarify the record. Defense counsel indicated in the first part of [her] argument that her position is that one transaction [occurred at] the CVS and [another occurred] at the Walmart. It is the State's position there are these two locations that are in play but it is one transaction. There is only one transaction at the very end. I am not clear what the two transactions are.

| | |
|---|---|
| [Trial judge:] | I understand. |
| [Trial counsel:] | Excuse me, Judge. The conversation on the audio track is not in Spanish. It is in English. |
| [Trial judge:] | Counsel, it is not even in evidence. We have had this discussion repeatedly. All right. Same rulings. I am denying the motions. . . . |

### Disclosure of the Identity of the Confidential Informant

Cardenas asserts that the state court unreasonably applied *Roviaro* by denying the defense's request for the disclosure of the identity of the confidential informant. (Doc. 1 at 4–6) *Roviaro*, 353 U.S. at 60–62 (footnotes omitted), holds that a defendant's need for the identity of a confidential informant may outweigh the common law privilege protecting the identity of a confidential informant:

> Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action. Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause. In these cases the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication.
>
> . . .
>
> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration

20

> the crime charged, the possible defenses, the possible significance
> of the informer's testimony, and other relevant factors.

"Subsequent case law has focused the inquiry on three factors: the extent of the informant's participation in the criminal activity, the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant, and the government's interest in nondisclosure." *United States v. Tenorio-Angel*, 756 F.2d 1505, 1509 (11th Cir. 1985).

### Informant's Participation in the Drug Transaction

Even though the confidential informant in Cardenas's case did not act as a "mere tipster," he did not substantially participate in the drug transaction. *United States v. Gutierrez*, 931 F.2d 1482, 1490 (11th Cir. 1991) ("[B]ecause this is not a case in which the informant acted as a mere tipster, to permit nondisclosure of the informant's identity requires further consideration."). He introduced Cardenas to the undercover detective and went with the detective to the parking lot of the pharmacy where Cardenas and the detective negotiated the drug transaction. (Doc. 15-2 at 290, 297, 343, 415, 439) After that first meeting, he spoke to Cardenas on the telephone in front of the detective. (Doc. 15-2 at 352) He went with the detective to the parking lot of the grocery store where Heatly showed the detective the box of cash and where police arrested Cardenas and Heatly. (Doc. 15-2 at 360, 363, 368)

Because the confidential informant was not the only participant, other than Cardenas, in the drug transaction and his participation was not pivotal to the drug transaction, the informant's limited participation weighed against disclosure of the

informant's identity. *Tenorio-Angel*, 756 F.2d at 1511 ("We do not find that the informant played a pivotal role in the drug transactions with respect to the appellant's participation. The informant merely introduced appellant to the agents and then observed part of the criminal activity. This level of participation does not mandate disclosure.") (footnote omitted); *Gutierrez*, 931 F.2d at 1490–91 ("Nor is this a case in which the government is required to disclose the informant's identity because the government's informant was the sole participant other than the accused. Velez was always with at least one government agent who could testify to everything which occurred except for a few instances in which Velez spoke with the appellants while no government agent was present; consequently, Velez's involvement in the criminal activity alone does not mandate disclosure.") (citation omitted).

### Informant's Relationship to Cardenas's Defense

The confidential informant did not testify at trial. The prosecutor did not introduce at trial an out-of-court statement by the informant. The trial court sustained the defense's objection based on hearsay when the detective began to testify about what he heard the informant discuss on the telephone. (Doc. 15-2 at 342–43) Also, the detective testified that he later heard the informant speak with Cardenas during a second telephone call, but he did not testify about any statement by the informant to Cardenas. (Doc. 15-2 at 352) The absence of testimony or an out-of-court statement by the informant at trial weighed against disclosure of the informant's identity. *Tenorio-Angel*, 756 F.2d at 1511 ("We also find that the informant was not used as a phantom

witness against appellant. The tapes involving phone conversations with the informant were struck from the record.").

Trial counsel argued that the confidential informant's testimony was necessary to rebut testimony by a detective who stated that police paid the informant for his cooperation. (Doc. 15-2 at 494) Trial counsel contended that the informant would testify that he faced criminal charges and expected leniency in the criminal case. (Doc. 15-2 at 493–94) However, trial counsel elicited on cross-examination testimony by the detective concerning the benefit that the informant received for his cooperation and opened the door to further examination concerning the matter on redirect. (Doc. 15-2 at 314–15, 331–32, 428–31) Because the informant did not testify and the prosecutor did not introduce an out-of-court statement by the informant, the credibility of the informant was not at issue at trial. *See* § 90.806(1), Fla. Stat. ("When a hearsay statement has been admitted in evidence, credibility of the declarant may be attacked and, if attacked, may be supported by any evidence that would be admissible for those purposes if the declarant had testified as a witness.").

Trial counsel further argued that the confidential informant's testimony was necessary to rebut evidence that suggested that Cardenas and the undercover detective met three times to discuss the drug transaction. (Doc. 15-2 at 493–94) Trial counsel contended that the informant would testify that Cardenas and the detective met twice. (Doc. 15-2 at 493–94) Also, trial counsel argued that the informant's testimony was necessary to rebut testimony by the detective who stated that Heatly wanted to complete the drug transaction at a house nearby. (Doc. 15-2 at 295)

23

However, the prosecutor proved that Cardenas and the undercover detective agreed to a single sale of three kilograms of cocaine. (Doc. 15-2 at 297, 348, 441–43) Police discovered a box in Heatly's car that contained $93,000.00 in cash and three kilograms of cocaine in the trunk of the detective's car. (Doc. 15-2 at 333, 441–43, 451, 478) Cardenas and the detective negotiated the price, Cardenas expected to receive a commission of $3,000.00 per kilogram for brokering the transaction, and Cardenas insisted that the detective not lower the price below $31,000.00 per kilogram. (Doc. 15-2 at 345–48, 354–55, 365–66) The informant's testimony would not rebut this overwhelming evidence of Cardenas's guilt. *Tenorio-Angel*, 756 F.2d at 1511 ("'Mere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure. The defendant must show that the informant's testimony would significantly aid in establishing an asserted defense.'") (citations omitted).

Because the foregoing factors weigh against the disclosure of the confidential informant's identity, the state court did not unreasonably apply *Roviaro*. *See also United States v. Kerris*, 748 F.2d 610, 614 (11th Cir. 1984) ("Because the appellants have failed to establish the importance of the informant's testimony, we need not consider the strength of the government's interest in preserving the confidentiality of the informant.").

**Disclosure of the Video Recording**

Cardenas asserts that the state court violated his federal right to due process by not granting the defense's motion for disclosure of the video recording of the drug

transaction. (Doc. 1 at 8) He contends that, even though trial counsel viewed the video recording, trial counsel was unable to identify exculpatory evidence contained on the recording without Cardenas's assistance. (Doc. 1 at 8) He asserts that the trial court violated his federal right to effective assistance of counsel by denying trial counsel's request to view the recording with him. (Doc. 1 at 8)

The prosecutor disclosed the video recording to the defense by permitting trial counsel to view the video recording with an interpreter, who translated the recorded conversations in Spanish to English. (Doc. 15-2 at 122–24) Also, the prosecutor disclosed forty photographs derived from the video recording and permitted both trial counsel and Cardenas to view the photographs together. (Doc. 15-2 at 261) The prosecutor introduced into evidence at trial some of those photographs. (Doc. 15-2 at 371–76) The trial court denied trial counsel's request to review the recording with Cardenas because the confidential informant appeared on the recording. (Doc. 15-2 at 261–65) Because, as explained above, relevant factors weighed against the disclosure of the informant's identity, the state court did not unreasonably deny trial counsel's request to view the recording with Cardenas.

Also, "[t]he rule of *Brady v. Maryland*, 373 U.S. 83 (1963), . . . involves the discovery, after trial of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976). "There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one; as the Court wrote recently, 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . . .'" *Weatherford v. Bursey*,

429 U.S. 545, 559 (1977) (quoting *Wardius v. Oregon*, 412 U.S. 470, 474 (1973)). Because the prosecutor disclosed the video recording to the defense before trial, *Brady* does not apply.

Even if *Brady* applies, Cardenas fails to demonstrate that the video recording contained exculpatory or impeaching evidence. *Rimmer v. Sec'y, Fla. Dep't Corrs.*, 876 F.3d 1039, 1054 (11th Cir. 2017) ("To establish a *Brady* violation, a defendant must prove three essential elements: (1) that the evidence was favorable to the defendant, either because it is exculpatory or impeaching; (2) that the prosecution suppressed the evidence, either willfully or inadvertently; and (3) that the suppression of the evidence resulted in prejudice to the defendant."). Cardenas instead speculates that the video recording contains exculpatory evidence. *United States v. Naranjo*, 634 F.3d 1198, 1212 (11th Cir. 2011) ("*Brady* applies only to exculpatory and impeachment evidence, and Naranjo's argument that the report contains exculpatory information is, at best, speculative.").

Lastly, Cardenas fails to cite a U.S. Supreme Court opinion that holds that a trial court violates a defendant's Sixth Amendment right to counsel by prohibiting counsel from reviewing evidence containing confidential information with a defendant. *Geders v. United States*, 425 U.S. 80, 91 (1976), held that "an order preventing petitioner from consulting his counsel 'about anything' during a 17-hour overnight recess between his direct-and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment." *Perry v. Leeke*, 488 U.S. 272, 284–85 (1989), declined to extend the holding in *Geders* to an order prohibiting a

defendant to speak with counsel during a fifteen-minute recess, before cross-examination of the defendant began. Because neither opinion addresses the claim asserted by Cardenas, neither opinion serves as "clearly established law" under 28 U.S.C. § 2254(d). *Loggins v. Thomas*, 654 F.3d 1204, 1222 (11th Cir. 2011) ("The Supreme Court has repeatedly held that only the actual holdings of its decisions can 'clearly establish [ ]' federal law for § 2254(d)(1) purposes. Because implications are not actual holdings, the implications of Supreme Court decisions cannot clearly establish federal law for § 2254(d)(1) purposes anymore than dicta can.") (citations omitted).

Even if the holdings in *Geders* and *Perry* extend to Cardenas's claim, Cardenas does not demonstrate that the state court unreasonably applied either opinion. The Florida rule governing discovery in a criminal case prohibits the disclosure of the identity of a confidential informant unless the failure to disclose the informant's identity will infringe the defendant's constitutional rights. Fla. R. Crim. P. 3.220(g)(2) ("Disclosure of a confidential informant shall not be required unless the confidential informant is to be produced at a hearing or trial or a failure to disclose the informant's identity will infringe the constitutional rights of the defendant."). Opinions by courts of appeals hold that the need to protect classified or confidential information may justify restrictions on a defendant's right to communicate with counsel about that information. *United States v. Moussaoui*, 591 F.3d 263, 289 (4th Cir. 2010) ("The right to communicate with counsel at any point in the proceedings is not absolute. '[I]n certain contexts there can be an important need to protect a countervailing interest,

which may justify a restriction on defendant's ability to consult with his attorney if the restriction is carefully tailored and limited.'") (citation omitted); *Morgan v. Bennett*, 204 F.3d 360, 367 (2d Cir. 2000) ("*Geders* and *Perry* stand for the principle that the court should not, absent an important need to protect a countervailing interest, restrict the defendant's ability to consult with his attorney, but that when such a need is present and is difficult to fulfill in other ways, a carefully tailored, limited restriction on the defendant's right to consult counsel is permissible.").

The state court determined under *Roviaro* that the need to protect the confidential informant's identity outweighed counsel's need to view the video recording depicting the confidential informant with Cardenas. The state court allowed trial counsel to view the video recording by herself, to discuss the video recording with Cardenas, and to view and discuss with Cardenas forty photographs derived from the video recording. The prosecutor did not introduce into evidence the video recording and instead introduced some of the forty photographs disclosed to the defense.

Because the state court carefully tailored the protective order by permitting trial counsel to discuss the contents of the video recording with Cardenas and by permitting trial counsel to view photographs derived from the recording with Cardenas, the state court did not unreasonably deny Cardenas's claim. *Morgan*, 204 F.3d at 368 ("We conclude that valid concerns for the safety of witnesses and their families and for the integrity of the judicial process may justify a limited restriction on a defendant's access to information known to his attorney."). *See also United States v. Herrero*, 893 F.2d 1512, 1526 (7th Cir. 1990), *abrogated on other grounds by United States v. Durrive*, 902 F.2d 1221

(7th Cir. 1990) ("Herrero also contends that the protective order's restriction upon attorney-client communications infringed upon his rights to due process of law and effective assistance of counsel. Because it is a ridiculous argument, we have difficulty conceiving how an attorney's knowledge of privileged information impairs his client's defense, and, in particular, when it concerns a witness who did not even testify and thus offered no evidence against the defendant.").

Ground One and Ground Two are **DENIED**.

**Ground Three**

Cardenas asserts that trial counsel was ineffective for not arguing that disclosure of the identity of the confidential informant was necessary to support an entrapment defense. (Doc. 1 at 10–11) The post-conviction court denied the claim as follows (Doc. 15-2 at 907–10) (state court record citations omitted):

> . . . Defendant alleges that trial counsel was ineffective for failure to move to compel the identification of the confidential informant based on the grounds that the informant's identity was necessary to support the defense of entrapment. Defendant contends that although his counsel did move for the disclosure of the confidential informant she did not argue that the identity of the informant was necessary to pursue a defense theory of entrapment. Defendant contends that his counsel presented only bare allegations that Defendant could not prepare his defense without disclosure. Defendant alleges that his counsel had knowledge of a myriad of facts that would have supported a defense of entrapment. Defendant contends that, had his counsel argued that the identity of the informant was necessary to support a defense of entrapment, the trial court would have been obligated to grant the disclosure. Defendant contends that the informant used the name Orlando when conversing with Defendant. Defendant contends that the confidential informant, "Orlando," could have testified to the following: Defendant had a drug-related conviction in 1987 but had not been involved in any drug-related activities since then, Orlando solicited

Defendant to buy guns and pills on more than one occasion, Orlando and his girlfriend used drugs together, Orlando was involved in domestic violence disputes with his girlfriend, Orlando tried to get Defendant involved in said disputes, three weeks before Defendant's arrest Orlando made repeated attempts to get Defendant to find a buyer for several [kilograms] of cocaine, but Defendant refused repeatedly, Orlando knew Defendant had financial problems due to Defendant's girlfriend's pregnancy and car repair bills, Orlando offered Defendant a "finder's fee" if Defendant would help Orlando find buyers for the cocaine, Orlando knew Defendant was not involved in any ongoing criminal activity related to drugs, Defendant questioned Orlando regarding the possibility that Orlando was trying to set him up and Orlando lied and said he was not dealing with the cops; which phone calls were monitored and approved of by his police handlers; and that Orlando initiated these activities over a period of two years. Defendant argues that if his counsel had properly argued the motion for disclosure and it was granted, she could have subsequently moved to dismiss the case based on entrapment.

After reviewing the allegations, the court file, and the record, the Court found in its August 25, 2016 Order that Defendant presented a facially sufficient claim. Accordingly, the Court ordered the State to respond to Defendant's claim. In its October 24, 2016 Response, the State conceded that Defendant was entitled to an evidentiary hearing on [the claim]. Accordingly, the Court granted an evidentiary hearing on [the claim].

At the evidentiary hearing, Defendant testified that his trial attorney, Ms. Dietsch, did file a motion to compel the identity of the confidential informant in this case. Defendant testified that he never reviewed this motion with his counsel. Defendant testified that his counsel did not argue anything about entrapment during the hearing on the motion to compel.

The State then called Ms. Dietsch, Defendant's trial counsel, to testify. Ms. Dietsch testified that on her third visit with Defendant they discussed whether to file a motion to compel the identification of the confidential informant. She testified that she explained to Defendant that if the confidential informant's identity was revealed that Defendant would not be getting any offers. Ms. Dietsch testified that at this same meeting Defendant had now changed his version of events and told her that he had brokered the drug transaction but that he had never been in possession of any drugs or money. She testified that had

Defendant told her that he knew "Orlando" and could have provided contact information for him prior to trial that she would have tried to contact Orlando and see what he had to say before turning to the formal process of requesting that the identity of the confidential informant be revealed. Ms. Dietsch testified that she did file a motion to compel the videotape and the identity of the informant in this case. She testified that had she known about Defendant's relationship with Orlando and the possibility that Orlando had been pressuring Defendant, she would have raised this at the motion to compel hearing.

After reviewing the allegations, the testimony and evidence presented at the evidentiary hearing, the written arguments provided by the State and defense, the court file, and the record, the Court finds that Defendant failed to meet the two-prong test as set forth in *Strickland*. When asserting a claim of ineffective assistance of counsel, a defendant must prove that counsel's performance was deficient and the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

The Court finds that this issue rests on a determination of credibility. The Court finds that the Ms. Dietsch's testimony was more credible than Defendant's testimony. The Court finds that according to Ms. Dietsch's credible testimony Defendant never provided her with information regarding his relationship with Orlando or contact information for Orlando. As such, Ms. Dietsch had no reason to investigate the possibility that Orlando participated in an entrapment scheme against Defendant. Accordingly, there would have been no reason for Ms. Dietsch to raise the issue of an entrapment defense at the motion to compel hearing. As such, Defendant cannot satisfy the deficiency prong of *Strickland*. Accordingly, [the claim] must be denied.

The post-conviction court determined that trial counsel was more credible than Cardenas at the evidentiary hearing, and a state court's credibility determination receives deference on federal habeas. *Nejad v. Att'y Gen., State of Ga.*, 830 F.3d 1280, 1292 (11th Cir. 2016) ("'Federal habeas courts have no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'") (citation omitted).

Under Florida law, "in asserting the defense of subjective entrapment, the defendant has the burden of showing that a government agent induced him to commit the charged offense and that he was not predisposed to commit it." *Harris v. State*, 279 So. 3d 268, 270 (Fla. 5th DCA 2019) (citing *Munoz v. State*, 629 So. 2d 90, 99 (Fla. 1993)). "If the defendant presents evidence of his lack of predisposition, the burden shifts to the State to rebut that evidence beyond a reasonable doubt." *Harris*, 279 So. 3d at 270. "The state may prove predisposition with evidence of the defendant's prior criminal activities, his reputation for such activities, reasonable suspicion of his involvement in such activity, or his ready acquiescence in the commission of the crime." *Harris*, 279 So. 3d at 270 (citation and internal quotations omitted).[3]

Trial counsel testified that Cardenas first told her that he was merely present where the drug transaction occurred but denied involvement in the transaction because he never possessed the drugs or the money. (Doc. 15-2 at 940–41) After trial counsel discussed whether to move for disclosure of the identity of the confidential informant, Cardenas told her that the video recording might show that he brokered the drug transaction, but he denied possessing the drugs or the money. (Doc. 15-2 at 942) In a later meeting, Cardenas told trial counsel that he initially participated in the drug

---

[3] *See* § 777.201(1), Fla. Stat. ("A law enforcement officer, a person engaged in cooperation with a law enforcement officer, or a person acting as an agent of a law enforcement officer perpetrates an entrapment if, for the purpose of obtaining evidence of the commission of a crime, he or she induces or encourages and, as a direct result, causes another person to engage in conduct constituting such crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it.").

transaction but later abandoned the transaction. (Doc. 15-2 at 947) Cardenas never told trial counsel that the informant's name was Orlando, that Cardenas knew the informant well, or that the informant pressured him to broker the drug transaction. (Doc. 15-2 at 942–43) Even after trial counsel viewed and discussed with Cardenas the video recording, Cardenas did not disclose to trial counsel these facts relevant to an entrapment defense. (Doc. 15-2 at 944)

Because Cardenas failed to inform trial counsel that the confidential informant knew that Cardenas desperately needed money and pressured him to broker the drug transaction for money, trial counsel did not deficiently perform, and the state court did not unreasonably deny the claim. *Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."); *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000) ("[A] reasonable attorney could have concluded that a theory of self-defense was inconsistent with Petitioner's own description of the killing. The reasonableness of an attorney's acts can depend upon 'information supplied by the defendant' and 'the defendant's own statements or actions.'") (quoting *Strickland*, 466 U.S. at 691).

Ground Three is **DENIED**.

## Ground Four

Cardenas asserts that trial counsel was ineffective for not presenting an entrapment defense at trial. (Doc. 1 at 12–13) He contends that the evidence proved

that he was not predisposed to commit the crimes and that the confidential informant induced him to commit the crimes. (Doc. 1 at 12–13) The post-conviction court denied the claim as follows (Doc. 15-2 at 910–13) (state court record citations omitted):

> . . . Defendant alleges trial counsel was ineffective for failing to pursue an entrapment defense at trial. Defendant relies on the facts alleged in [the claim above] as a means of presenting that he was induced and lacked the propensity to commit the crimes. Defendant further contends that his counsel should have introduced his phone records in support of an entrapment defense. Defendant contends that his phone records would have demonstrated the frequency with which the confidential informant pursued Defendant over a two-year period attempting to induce Defendant to participate in drug-related activities. Defendant contends that had counsel pursued an entrapment defense and introduced supporting evidence at trial there is a reasonable probability that the outcome of the trial would have been different.

> After reviewing the allegations, the court file, and the record, the Court found in its August 25, 2016 Order that Defendant presented a facially sufficient claim. Accordingly, the Court ordered the State to respond to Defendant's claim. In its October 24, 2016 Response, the State conceded that Defendant was entitled to an evidentiary hearing on [the claim]. Accordingly, the Court granted an evidentiary hearing on [the claim].

> At the evidentiary hearing, Defendant testified that the confidential informant, "Orlando," contacted him repeatedly for a period of two years trying to get Defendant to engage in some illicit activity. Defendant testified that he was confused why Orlando kept approaching him about dealing drugs, because he did not do that kind of thing.

> Defendant testified that at some point during those two years Orlando became aware of Defendant's financial problems and again asked Defendant to engage in some illicit activity, which Defendant finally agreed to. Defendant testified that even after Orlando learned of Defendant's financial troubles, Orlando still had to ask Defendant approximately twelve times before Defendant agreed to engage in criminal activity. Defendant testified that he was arrested for drug charges only once in 1987 and had not engaged in any drug activity since then. Defendant testified than in the approximately six times he met with his

attorney before trial he told her about his relationship with Orlando and about the two years of phone calls between the two of them when Orlando was trying to get Defendant to engage in drug transactions. Defendant testified that no argument regarding entrapment was made at trial.

On cross-examination, Defendant testified that he told Ms. Dietsch about his interest in an entrapment defense the first day that she came to see him. On redirect examination, Defendant explained that at the time of trial he was not familiar with the term of "entrapment," but that he explained the situation fully to his trial counsel.

The State then called Ms. Dietsch to testify. Ms. Dietsch testified that she met with Defendant approximately seven times in the time leading up to trial. Ms. Dietsch testified that during their initial meetings Defendant told her that he was merely a bystander and that he was not involved in any drug transaction. Ms. Dietsch testified that with these facts you cannot raise an entrapment defense. Ms. Dietsch testified during their conversations at the jail Defendant never mentioned the name "Orlando." She testified that Defendant never told her about the kind of relationship with Orlando that he has described in his motion for post-conviction relief. Ms. Dietsch testified that had Defendant told her about Orlando and their relationship in the fashion that he has alleged in his post-conviction motion that she would have explored a possible entrapment defense. She testified that in one of their later meetings Defendant did mention something about abandoning his intent to be part of the drug transaction, but that he still did not say anything that would have supported an entrapment defense. Ms. Dietsch testified that at trial they raised a reasonable doubt defense. Ms. Dietsch testified that she recalled Defendant having four prior drug charges. She testified that had they raised an entrapment defense these charges would have come into play.

After reviewing the allegations, the testimony and evidence presented at the evidentiary hearing, the written arguments provided by the State and defense, the court file, and the record, the Court finds that Defendant failed to meet the two-prong test as set forth in *Strickland*. When asserting a claim of ineffective assistance of counsel, a defendant must prove that counsel's performance was deficient and the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

35

> The Court finds that this issue rests on a determination of credibility. The Court finds Ms. Dietsch's testimony more credible than Defendant's testimony. The Court finds that based on Ms. Dietsch's credible testimony Defendant never provided information regarding his relationship with Orlando or any other facts that would have supported a possible entrapment defense. Defendant first told Ms. Dietsch that he was not involved in the drug transaction and later changed his story, telling her that he was initially involved in the drug transaction but abandoned his intent before the transaction took place. Neither set of facts would have supported an argument for an entrapment defense. As such, Defendant cannot satisfy the deficiency prong of *Strickland*. Accordingly, [the claim] is denied.

The post-conviction court determined that trial counsel was more credible than Cardenas at the evidentiary hearing, and a state court's credibility determination receives deference on federal habeas. *Nejad*, 830 F.3d at 1292.

As explained above, trial counsel testified that Cardenas never told her that Cardenas knew the confidential informant well or that the informant pressured him to broker the drug transaction. (Doc. 15-2 at 942–43) Cardenas first claimed that he was merely present during the transaction, later admitted that he brokered the transaction but denied possessing the drugs or the money, and later claimed that he abandoned the drug transaction. (Doc. 15-2 at 940–42, 944, 947)

Because Cardenas failed to inform trial counsel that the confidential informant pressured him to broker the drug transaction for money, trial counsel did not deficiently perform, and the state court did not unreasonably deny the claim. *Johnson v. Alabama*, 256 F.3d 1156, 1178 (11th Cir. 2001) ("In formulating their strategy before trial, Johnson's lawyers were aware of statements by Johnson himself that he was the second man involved in the robbery and that he had shot at Mr. Cantrell. Johnson's

36

now-preferred 'third man' defense, therefore, was not compatible with the information he conveyed to his lawyers at the time.") (footnote omitted).

Ground Four is **DENIED**.

It is therefore **ORDERED**:

1.      The petition for the writ of habeas corpus (Doc. 1) is **DENIED**.

2.      The Clerk is directed to enter judgment against Cardenas and close this case.

3.      Cardenas neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Consequently, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**.

**DONE AND ORDERED** in Tampa, Florida this 14th day of August, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

All parties of record including unrepresented parties, if any.

37